In re CONFIDENTIAL (J.E.S.),
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 95–BS–769.

District of Columbia Court of Appeals.

Argued Dec. 14, 1995.

Decided Jan. 29, 1996.

J.E.S. pro se.

Leonard H. Becker, Bar Counsel, Washington, DC, for petitioner.

Before STEADMAN, FARRELL, and REID, Associate Judges.

REID, Associate Judge:

In early October 1993, Bar Counsel instituted disciplinary proceedings against respondent for a violation of Rule 1.5(e)(2) of the Rules of Professional Conduct, which provides that:

> A division of a fee between lawyers who are not in the same firm may be made only if: .... (2) The client is advised, in writing, of the identity of the lawyers who will participate in the representation, of the contemplated division of responsibility, and of the effect of the association of lawyers outside the firm on the fee to be charged; ....

The proceedings resulted from respondent's representation of a client in an employment matter; the client alleged wrongful discharge due to her HIV-positive status. Respondent signed a retainer agreement with the client on February 8, 1992, which specified that respondent's fee would be "thirty-three and one-third percent (33⅓%) of the gross amount ... of any settlement, judgment or jury award in this case." The agreement also provided that respondent would obtain co-counsel to assist in the representation of the client. On the same day, respondent entered into a letter agreement engaging another attorney as co-counsel "to help litigate [the] case" and proposing a 50–50 split of fees and expenses. The letter was silent as to co-counsel's specific responsibilities, but mentioned that co-counsel would "help litigate this case...." The client did not receive a copy of the letter; nor did respondent identify co-counsel in writing. Nonetheless, the client met with respondent and co-counsel on

two occasions, and understood that co-counsel's fees would come from respondent's contingent fee. However, the client did not have an understanding of the "contemplated division of responsibility" between the two attorneys.

The employment case was settled for $100,000. Respondent tendered one-half of his recovery to co-counsel. When co-counsel refused to accept his share of the fee, respondent placed the amount in escrow. Subsequently, co-counsel sued respondent and the client, "alleging constructive fraud, intentional misrepresentation, civil conspiracy, forgery, breach of contract, quantum meruit, unjust enrichment, tort arising from breach of contract, tortious interference with contractual relations, and negligence." His demand was $2.5 million in compensatory damages and $1 million in punitive damages. Prior to being dismissed as a defendant, the client incurred $2,000 in legal fees in connection with the co-counsel's suit against her. Respondent advised the client to retain other counsel, and voluntarily paid the client's legal fees.

Respondent cooperated fully with Bar Counsel's disciplinary investigation. He was forthright and candid in his responses to Bar Counsel's inquiries. At the end of the investigation, and after receiving the hearing committee's report, Bar Counsel reluctantly requested an informal admonition as a sanction.[1] Bar Counsel also expressed the view that had the decision been a discretionary one, no case would have been brought against respondent.

While recognizing the mitigating factors cited by Bar Counsel, the Board on Professional Responsibility directed Bar Counsel to issue the informal admonition because "some discipline is appropriate in this case." The Board reasoned that there was a clear violation of the rule and "written disclosure is the crux of the rule."

## STANDARD OF REVIEW

 Our standard of review is governed by D.C.Bar R. XI § (9)(g)(1) which specifies in pertinent part that:

the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

This is the same standard that is applicable to the Board's review of the hearing committee's findings and conclusions. At the same time, we must accept "factual findings if those findings are supported by substantial evidence in the record, viewed as a whole." *In re Micheel*, 610 A.2d 231, 234 (D.C.1992) (citing *In re Thompson*, 583 A.2d 1006, 1008 (D.C.1990)). "Substantial evidence means enough evidence for a reasonable mind to find sufficient to support the conclusion reached." *In re Thompson*, 583 A.2d at 1008. At the same time, we do not owe deference to the Board's determination of "'ultimate facts,' which are really conclusions of law." *In re Micheel*, 610 A.2d at 234 (citing *Washington Chapter of the Am. Inst. of Architects v. District of Columbia Dep't of Employment Servs.*, 594 A.2d 83, 87 (D.C. 1991)). With respect to the punishment recommended by the Board, this court will adopt the recommendation "'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *In re Steele*, 630 A.2d 196, 199 (D.C.1993) (quoting D.C.Bar.R. XI, § 9(g) (other citations omitted)).

## ANALYSIS

Rule 1.5(e)(2) requires that the client be notified in writing of:

(1) the identity of any counsel from another firm who will participate in the client's representation and share the fee; (2) the contemplated division of responsibility between the attorneys; and (3) the effect the engagement of a lawyer from another firm will have on the client's fee.

Rule 1.5(e) was designed "to encourage lawyers to affiliate other counsel, who are better equipped by reason of experience or special-

---

1. The hearing committee recommended that no discipline be imposed.

ized background to serve the client's needs...." D.C.RULES OF PROFESSIONAL CONDUCT, Rule 1.5(e), Cmt. para. 10. Moreover, the Rule emphasizes "joint responsibility" but ensures flexibility by not requiring a co-counsel "to perform any minimum portion of the total services rendered." *Id.,* para. 12. Undoubtedly, to minimize controversy and protest from the client, Rule 1.5(e), unlike its counterpart in the AMERICAN BAR ASSOCIATION'S MODEL RULES OF PROFESSIONAL CONDUCT, requires that the client be notified of the joint responsibility, in writing. Furthermore, it clearly "[requires] that the client be informed [in writing] of the identity of lawyers sharing the fee, their respective responsibilities in the representation, and the effect of the association of lawyers outside on the fee charged." *Id.,* para. 14.[2] The Board found that respondent did not comply with the requirement of notice in writing, but did arrange to have the client meet and confer with co-counsel on two occasions; and that he orally informed the client that co-counsel's fee would come from respondent's share of any settlement, judgment or jury award. However, the Board determined that the client never gained "an understanding of [what] each lawyer would do." Bar Counsel contends that "the Board's findings of fact are supported by record evidence." We agree.

**2.** The ABA Model Rule 1.5(e)(2) provides simply: "A division of fee between lawyers who are not in the same firm may be made only if: .... (2) the client is advised of and does not object to the participation of all the lawyers involved...."

**3.** We make no determination as to whether the letter retaining co-counsel satisfies the requirements of Rule 1.5(e)(2) since it was never sent to the client.

**4.** Specifically, he cites: *Phillips v. Joyce,* 169 Ill.App.3d 520, 120 Ill.Dec. 22, 28, 523 N.E.2d 933, 939 (1988); *In re Ziemann,* 214 Ill.App.3d 988, 158 Ill.Dec. 654, 574 N.E.2d 767 (1991); and *Holstein v. Grossman,* 246 Ill.App.3d 719, 186 Ill.Dec. 592, 616 N.E.2d 1224 (1993). *Phillips* was a breach of contract case and did not involve a disciplinary action. However, the court did have occasion to discuss the Illinois disciplinary rule, which is similar to Rule 1.5(e)(2) in that notice to the client must be in writing and must reveal the division of fees, the basis for the division, and the responsibility of other counsel. The Illinois rule, DR 2–107(a)(1), states:

Respondent argues that his retainer agreement with the client not only was in writing but met most of the requirements of Rule 1.5(e)(2). The retainer agreement signed by the client does mention the retention of co-counsel, but it does not identify the name of the co-counsel. Other than indicating that co-counsel will "represent" the client, the retainer agreement is silent as to the division of responsibilities between respondent and co-counsel. Furthermore, there is no language in the retainer agreement which speaks to "the effect of lawyers outside the firm on the fee to be charged." We conclude that the retainer agreement does not satisfy Rule 1.5(e)(2)'s requirement of notification in writing. Respondent admits that he did not send a copy of his letter retaining co-counsel to the client;[3] and the record is devoid of any evidence that the client was notified of the division of responsibility between respondent and co-counsel. Accordingly, there is substantial evidence in the record to support the Board's factual findings.

Respondent asserts that the weight of the evidence reveals substantial compliance with Rule 1.5(e)(2). He cites no District law to support his theory of substantial compliance, but calls our attention to cases in Illinois, which has a rule similar to the District's.[4]

(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm, unless (1) the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for the performance of the legal services in question....

In an effort to comply with the Illinois rule, two attorneys who assumed joint responsibility for a class action case sent a letter to all class clients indicating that the attorneys "were jointly representing their interests and that the clients must sign a new contingent fee agreement." The letter generally mentioned the "combined efforts" of the attorneys. Respondent's situation is different from that discussed in *Phillips.* Both attorneys clearly were identified in a written communication to the clients. Moreover, the proceeding here is before the Board and is a disciplinary action, not a civil lawsuit before a court of law.

We need not decide whether "substantial compliance" would be enough to resist even an informal admonition because neither the Board nor we have found substantial compliance here: The only document arguably embodying the requirements of the rule was never sent to the client. Accordingly, we conclude that the Board did not err in its interpretation of Rule 1.5(e)(2). The Board's interpretation comports with the plain words of the rule.

■ We turn next to respondent's argument that no punishment should have been imposed on him, including the informal admonition. We are bound to accept the recommended disposition of the Board "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C.Bar R. XI, § 9(g)(1). This case is the first to arise under Rule 1.5(e)(2). Hence, there is no other case with which to compare the punishment imposed on respondent. However, the Board did examine sanctions imposed with respect to Rule 1.5(b) regarding the basis or rate of the fee to be charged to the client. After doing so, the Board concluded that:

> Since the effective date of the Rules in 1991, Bar Counsel has issued numerous informal admonitions to attorneys who failed to supply newly engaged clients the written disclosure of the basis or rate of the fee required by Rule 1.5(b).

Nonetheless, respondent maintains that punishment is unwarranted because: "Identical sanctions for analogous violations reveals nothing about the existence, absence or character of mitigating or aggravating circumstances." But it is clear that the Board did examine the mitigating factors in respondent's case, including his full cooperation

with the investigation, his payment of the client's legal fees necessary to defend co-counsel's lawsuit against her, and the absence of any prior disciplinary record.

It concluded that some minimal sanction, namely admonition, should be imposed. We agree. As this court said in *In re L.R.*, 640 A.2d 697, 701 (D.C.1994): "[W]hether respondent's conduct was reckless or somewhat less blameworthy, it trenched upon the statutory ban in a manner that justifies the issuance of an informal admonition." Accordingly, we affirm the Board's order "[directing] that Bar Counsel issue an informal admonition, and.... further [directing] that any informal admonition reiterate the many mitigating factors" discussed in the Board's order.[5]

*So ordered.*

---

*In re Ziemann* is not helpful because the court there found that the fee arrangement at issue did not constitute a division of fees under the disciplinary rule since both parties shared the same legal office. In *Holstein*, the court distinguished *Phillips*, making it clear that *Phillips* turned on the existence of a written communication to the clients in which both attorneys were identified. The court clearly stated:

> No such written consent occurred here. Absent such written consent, there can be no

substantial compliance. We distinguish *Phillips* on this ground.

186 Ill.Dec. at 603, 616 N.E.2d at 1235.

5. We agree with the Board that "for cases submitted to the Board but not decided before the new rules went into effect [on January 2, 1995], the informal admonition should remain confidential," at least where, as here, it is bar counsel, not the respondent, who extends proceedings past that date.